UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH JOHNSON,

        **Plaintiff,**                **CIVIL ACTION NO. 14-cv-14630**

      **v.**                        **DISTRICT JUDGE SEAN F. COX**

KEITH PAPENDICK, et al.,        **MAGISTRATE JUDGE MONA K. MAJZOUB**

        **Defendants.**

_____/

### REPORT AND RECOMMENDATION

Plaintiff Kenneth Johnson, currently incarcerated at the Charles Egeler Reception and Guidance Center in Jackson, Michigan, filed this *pro se* civil rights action against fifteen defendants on December 8, 2014, pursuant to 42 U.S.C. § 1983.[1]  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (docket no. 3); Defendant Gregory W. Fuller, D.O.'s Motion to Dismiss (docket no. 21); Michigan Department of Corrections (MDOC) Defendants Maxine Collard, Nathanael Neusbaum, and Summer Laughhunn's Motion to Dismiss (docket no. 25); Defendant Kevin Chan, M.D.'s Motion to Dismiss (docket no. 28); and Defendant Chan's Motion for Extension of Time to Respond to Plaintiff's First Request for Production of Documents (docket no. 30). Defendants Corizon Health, Inc., Dr. Keith Papendick, Dr. Terence Whiteman, Dr. Rashed Bashir, Dr. Lynn Larson, Dr. Shi-Yu Tan, and Karen Duckworth filed a Response to Plaintiff's Motion (docket no. 10), to which Plaintiff replied (docket no. 31).  Plaintiff also filed a "Response in Opposition to D[e]fendants Answer to Plaintiff's Complaint, Affirmative Defenses,

---

[1] Defendants Michigan Department of Corrections, Jeffery Stieve and John Doe(s) have not yet been served.

and Failure to State a Claim and Title Two ADA Violations (docket no. 29), which the Court will construe as Plaintiff's response to Defendants' Motions to Dismiss. This action has been referred to the undersigned for all pretrial purposes. (Docket no. 15.) The Court dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.   RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (docket no. 3) be **DENIED**; Defendants Gregory W. Fuller, D.O., Maxine Collard, Nathanael Neusbaum, Summer Laughhunn, and Kevin Chan, M.D.'s Motions to Dismiss (docket nos. 21, 25, and 28) be **GRANTED**; Defendant Chan's Motion for Extension of Time to Respond to Plaintiff's First Request for Production of Documents (docket no. 30) be **DENIED** as moot; and Plaintiff's Complaint be dismissed in its entirety.

## II.   REPORT

### A.   Background

The events giving rise to this action commenced in November 2012 while Plaintiff was incarcerated at the Lakeland Correctional Facility in Coldwater, Michigan. (Docket no. 1 at 5.) Around that time, Plaintiff began experiencing chest pain and shortness of breath and was transported to Borgess Medical Center for evaluation and treatment. Plaintiff alleges that while he was at Borgess Medical Center, he was diagnosed with pulmonary arterial hypertension secondary to scleroderma, interstitial lung disease with a UIP pattern secondary to scleroderma, mild hypoxemia secondary to interstitial lung disease, and pulmonary hypertension. According to Dr. Jason Ladwig, M.D. of the Borgess Medical Center, there is no successful or effective

therapy for Plaintiff's condition other than trying to control his scleroderma, and Plaintiff's long-term prognosis is guarded at best, with a life expectancy of three to five years. (*Id*. at 34.) Plaintiff was discharged from Borgess Medical Center on November 28, 2012 and was assigned to the Duane Waters Health Center in Jackson, Michigan, a health care facility operated by the Michigan Department of Corrections (MDOC). Plaintiff was transferred to his current location, the Assisted Living Medical Unit at the Charles Egeler Reception and Guidance Center in Jackson, Michigan, in January 2013. (Docket no. 1 at 16.)

Plaintiff submitted several medical records to the Court along with his Complaint that document his medical history since his November 2012 hospitalization. (*Id*. at 34-41.) On November 19, 2013, Plaintiff was evaluated by Dr. Elena Schiopu, M.D., who opined that Plaintiff's functional status was worsening, his right heart failure will likely play the biggest role in his prognosis, he would likely need parenteral prostaglandins, and his only option would be a double lung transplant. In a December 5, 2013 letter purportedly from Defendant Kevin M. Chan, M.D., the Medical Director of Lung Transplantation for the University of Michigan Health System's Department of Internal Medicine, to Muhammad S. Rais, M.D. of the MDOC's Bureau of Healthcare Services, Defendant Chan explained that he reviewed Plaintiff's medical records and determined that Plaintiff was not a candidate for lung transplantation at that time. He expounded that Plaintiff had not been adequately treated with medications to see if they would improve his lung condition and that Plaintiff's social status would make it difficult for him to be a good candidate. Defendant Chan added that Plaintiff could be reevaluated for transplantation if his lung disease progressed after "an adequate trial of maximal medical management." (*Id*. at 36.) Other records indicate that in May, June, and July 2014, Plaintiff sought an appointment

with a lung transplant center, but was denied by Defendant Papendick based on Defendant Chan's December 2013 evaluation.

Plaintiff asserts that his condition makes him incapable of performing daily activities such as climbing stairs, walking 1-2 blocks, making his bed, and managing his wheelchair. He alleges that to deny his requests that he be evaluated for placement on a lung transplant list or to ignore his need for a transplant or other suitable treatment constitutes deliberate indifference to a serious medical condition in violation of the Eighth Amendment. Plaintiff also alleges that "he was advised by each and every defendant listed in this complaint, that they cannot place plaintiff on the Lung Transplant List, that his mortality is certain, and that there is no cure for his pulmonary diseases." (Docket no. 1 at 6.) Plaintiff further alleges that Defendants' deliberate refusal to properly treat Plaintiff caused him significant injury and suffering, and he avers that he will suffer further harm if Defendants continue to deny him proper medical care.

### B.    Discussion

#### 1.    *Defendants' Motions to Dismiss [21] [25] [28]*

Defendants Fuller, Collard, Neusbaum, Laughhunn, and Chan move to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that Plaintiff has failed to state a claim upon which relief can be granted. (Docket nos. 21, 25, and 28.) Defendants Collard, Neusbaum, and Laughhunn also assert that they are entitled to qualified immunity. When deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The plaintiff must provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and

the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed.R.Civ.P. 8(a)(2)). But this statement "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action;" instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

a.   <u>Procedural Issues</u>

i.   Color of State Law

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). A private party may be deemed to be a state actor and thus acting under the color of law if the party's actions are "fairly attributable to the State." *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)); *West v. Atkins*, 487 U.S. 42, 49 (1988). The Sixth Circuit relies upon the public function test, state compulsion test, and symbiotic relationship or nexus test in determining whether the actions of a private actor amount to state action. *Molnar v. Care House*, 574 F. Supp. 2d 772, 783 (E.D. Mich. 2008), *aff'd*, 359 F. App'x 623 (6th Cir. 2009). Those tests are described in *Molnar* as follows:

> Under the public function test, a private party is deemed to be a state actor if the powers exercised by that party have traditionally been exclusively reserved to the state. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992). The standard used under this test is rigorous, and "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.' " *Flagg Brothers Inc. v. [Brooks]*, 436 U.S. 149, 158, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The state compulsion test involves determining whether the state has exercised such coercive power, or control over

5

the defendant, that in law, the choice of the private actor is deemed to be that of the state. *Campbell v. PMI Food Equipment Group, Inc.,* 509 F.3d 776, 784 (6th Cir.2007); *Wolotsky v. Huhn, supra* ("More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives."). . . . Finally, under the symbiotic relationship or nexus test, a § 1983 claimant must "demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman v. Higbee Co.,* 319 F.3d 825, 834 (6th Cir.2003).

*Molnar*, 574 F. Supp. 2d at 783-84. The "receipt of public funds, being a party to a government contract, and government referrals fail[s] to prove that the state controlled or coerced the defendant to act in a certain way." *Id.* at 785 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 841-42 (1982)). "Decisions as to whether a private action may be considered a 'state action' are fact specific and are made on a case-by-case basis." *Id*. at 783.

In his Complaint, Plaintiff generally alleges that each Defendant was acting under color of state law at all times relevant to Plaintiff's claims. (Docket no. 1 at 6, 9, 12, and 17.) Defendants Fuller and Chan, however, dispute such an allegation. With regard to Defendant Fuller, Plaintiff alleges that he was a "Medical Provider of Health Care Services" for the MDOC and was responsible for overseeing Plaintiff's medical care. (*Id*. at 11.) The only information Defendant Fuller offers to rebut Plaintiff's allegation is that he saw Plaintiff in his capacity as a private physician. (Docket no. 21 at 18.) Notably, Defendant Fuller has not offered any further information regarding himself, his medical practice, or his treatment of Plaintiff. The Court is not required to accept as true conclusory legal statements that Defendants were acting under color of law. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). However, in ruling on a motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc.*, 487 F.3d at 476; *Inge*, 281 F.3d at 619. Accordingly, without further

6

information from Defendant Fuller, for purposes of the instant motion, the Court should accept Plaintiff's allegation that Defendant Fuller was acting under color of state law as required by 42 U.S.C. § 1983.

With regard to Defendant Chan, Plaintiff alleges that at all relevant times, he was the "Medical Director of the Lung Transplantation Program at the Department of Internal Medicine Division at the (U of M)" and that Defendant Chan was responsible for the University of Michigan's practices, polices, and procedures affecting the medical care that Plaintiff sought to receive. (Docket no. 1 at 10.) The December 5, 2013 letter attached to Plaintiff's Complaint, which is purportedly authored by Defendant Chan, corroborates Plaintiff's allegation regarding Defendant Chan's name, title, and employer. The letter indicates that Kevin M. Chan, M.D. is the Medical Director, Lung Transplantation for the University of Michigan Health System's Department of Internal Medicine. (*Id*. at 36.) Plaintiff has failed to set forth any allegations regarding the scope of Defendant Chan's relationship with the MDOC sufficient to determine whether the actions of Defendant Chan, a private actor, amounted to state action. Plaintiff's § 1983 claims against Defendant Chan should be dismissed for failure to show that Defendant Chan was acting under color of state law.

ii.   Exhaustion of Administrative Remedies

Next, Defendants Fuller and Chan assert that Plaintiff's Complaint should be dismissed because he failed to exhaust his administrative remedies. 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical

7

procedural rules. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo* 548 U.S. 81, 90-91 (2006). The procedural bar does not apply in cases where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).

Defendants Fuller and Chan produced a copy of the applicable grievance policy in this case, which is MDOC Policy Directive 03.02.130 (effective date 7/09/2007). (Docket no. 21-1; Docket no. 28-2.) This version of the MDOC Policy Directive states that "[p]rior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." MDOC Policy Directive 03.02.130, ¶ P. Information provided in the grievance must be "limited to the <u>facts</u> involving the issue being grieved (i.e. who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130, ¶ R.

Defendant Fuller argues that Plaintiff failed to attempt to resolve the issue with Defendant Fuller before filing the grievance as required by MDOC Policy Directive 03.02.130 ¶ P. (Docket no. 21 at 10.) Also, both Defendants Fuller and Chan assert that Plaintiff failed to identify them in his grievance in accordance with MDOC Policy Directive 03.02.130 ¶ R. (*Id.*; Docket no. 28 at 13-15.) Plaintiff attached copies of Grievance RGC14050061012D and its responses to his Complaint. (Docket no. 1 at 24-33.) The documents show that Plaintiff filed Grievance RGC14050061012D on May 28, 2014, complaining that the "following Michigan Department of Corrections Medical Team Members at (DWH), Dr. Papendick, RMO. Corizon UM Director. Choices Program Officials and the State of Michigan" collectively violated Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights and Title II of the ADA by denying him adequate medical treatment for his lung condition. Neither the grievance nor any responses

identify Defendants Fuller or Chan as persons who have denied Plaintiff such medical treatment. The MDOC addressed the grievance on its merits at all three steps of the grievance process.

The Sixth Circuit has declined to impose rigid technical requirements on prisoners who file grievances that give prison officials fair notice of the alleged misconduct that underlies the prisoner's complaint. *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citation omitted). Instead, the Sixth Circuit has cautioned that the procedural policies of the administrative grievance process are waivable when the MDOC elects to address a grievance on the merits rather than invoke a procedural bar to the grievance. *Reed-Bey*, 603 F.3d at 325 ("When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits," the court should do the same.).

The relevant MDOC policy directive requires the prisoner to include specific names in his grievance. Grievance RGC14050061012D complains of actions taken by Defendants Papendick, Stieve, and other medical team members and program officials without specifically naming the members and officials involved. Despite this, the MDOC elected to address the merits of the grievance through step three of the grievance process, and in doing so waived its own procedural standard. The Court should find, under the direction of *Reed-Bey*, that Plaintiff exhausted his administrative remedies against Defendants. Thus, the only remaining issue under a § 1983 analysis is whether Defendants deprived Plaintiff of a constitutional right.

b.    The Adequacy of Plaintiff's Complaint

i.    Plaintiff's Eighth Amendment Claim

To establish a cognizable claim for a violation of the Eighth Amendment under a theory of deliberate indifference to a serious medical need, an inmate must show that he suffered from a serious medical need and the official acted with a sufficiently culpable state of mind. *Farmer v.*

9

*Brennan*, 511 U.S. 825, 834 (1994).  A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (emphasis and citations omitted).  An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety.  *Farmer*, 511 U.S. at 837.

Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim.  *Hill v. Haviland*, 68 F. App'x 603, 604 (6th Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)).  Thus, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  "[W]hether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  *Estelle*, 429 U.S. at 107 (a disagreement between a physician and the prisoner regarding the course of treatment does not state a claim of deliberate indifference).

The Court will accept for purposes of Defendants' Motions that Plaintiff has a serious medical need.  However, Plaintiff has not established that Defendants knew of and disregarded an excessive risk to Plaintiff's health and safety.  This is not a case where Plaintiff received no treatment at all.  The record shows that Plaintiff received regular medical treatment for his condition, including transfer to an MDOC health care facility, regular medical examinations, several prescribed medications, and an evaluation regarding his candidacy for a lung transplant. (*See* docket no. 1 at 34-41.)  Plaintiff objects to the adequacy of that treatment, specifically that

10

he was denied placement on a lung transplant list and that he has not been reevaluated regarding his candidacy for a lung transplant.[2]   Essentially, Plaintiff disagrees with Defendants' medical judgment. A disagreement over treatment does not give rise to a constitutional violation.   As such, Plaintiff's Eighth Amendment claim against Defendants does not rise to the level required to establish deliberate indifference to a serious medical need, and should be dismissed on this premise alone.

Plaintiff's Eighth Amendment claim fails on other grounds.  To prevail under § 1983, a plaintiff must show that each defendant was personally involved in, or otherwise authorized, the alleged unconstitutional conduct.  *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  Plaintiff's showing in this regard is inadequate.  Throughout his Complaint, Plaintiff makes allegations against "Defendants" generally or "each and every Defendant."   In only two paragraphs does Plaintiff actually make allegations against named Defendants.  For example, in paragraph 46, Plaintiff alleges that he "was told by each and every Defendant, Attending Physicians, 'Dr. Larson, D.O., Dr. Bashir, M.D. 'Dr. Fuller, D.O., 'Dr. Rais, M.D., and Speciality [sic] 'Dr. Elena Schiopu, that they cannot place Plaintiff on the Lung Transplantation List, and his mortality is certain, there is no cure [for] his pulmonary diseases." (Docket no. 1 at 16.)  In paragraph 58, Plaintiff alleges that "Dr. Keith Papendick, each and every Defendant's [sic] failed and refused to administer the necessary medical treatment in order to save Plaintiff's life." (*Id*. at 18.)

After a thorough reading of Plaintiff's Complaint, it is unclear whether any Defendant was personally involved in Plaintiff's medical treatment or was authorized to make decisions regarding Plaintiff's candidacy for a lung transplant or an evaluation regarding the same.

---

[2] Plaintiff admits in his Response to Defendants' Motions that in February 2015, "Defendants extended a[n] obvious effort to having the Plaintiff considered once again by the University of Michigan Lung Transplantation Team. (Docket no. 29 at 18.)

Additionally, Plaintiff fails to specify where, when, or in what capacity any Defendant denied his requests for a lung transplant.   Particularly, with regard to Defendants Neusbaum and Laughhunn, the only time their names appear in Plaintiff's pleadings is when he introduces them as Defendants and on his Step II and Step III grievance responses.   It is well established that a defendant is not liable under 42 U.S.C. § 1983 if his or her only involvement in the constitutional violation involved the denial of an administrative grievance or failure to act.   *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).   Plaintiff's Eighth Amendment claim should be dismissed.

ii.     Plaintiff's Fifth and Fourteenth Amendment Claims

In Count Two of his Complaint, Plaintiff asserts that Defendants are depriving him of life without due process of law and denying him the equal protection of the law in violation of the Fifth and Fourteenth Amendments by denying Plaintiff's request for a physical lung transplant evaluation and placement on the lung transplantation list.   (Docket no. 1 ¶¶ 60-66.)   The Fifth Amendment to the United States Constitution states in relevant part that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."   U.S. Const. amend. V.   The Fifth Amendment's Due Process Clause applies only to actions of the federal government.   *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000); *Newsom v. Vanderbilt Univ.,* 653 F.2d 1100, 1113 (6th Cir. 1981).   Except for Defendant Chan, who is a private actor, Defendants are all allegedly state actors.   Therefore, Plaintiff's claim that his Fifth Amendment rights were violated should be dismissed.

With regard to the Fourteenth Amendment, Plaintiff alleges that Defendants violated his Due Process rights by collectively denying his efforts at each step of the grievance process.   The mere denial of a grievance, however, does not amount to a constitutional violation.   Additionally,

12

as a convicted prisoner, the Due Process Clause "affords [Plaintiff] no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Furthermore, Plaintiff has not set forth anything more than conclusory allegations to support an Equal Protection claim. Plaintiff's Fourteenth Amendment claims should be dismissed.

### iii.        Plaintiff's ADA Claim

Plaintiff alleges that Defendants discriminated against him on the basis of his disability in violation of Title II of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-33. (Docket no. 1 ¶¶ 67-73.) Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prevail on a claim under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under a program solely because of his disability. *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).

The ADA applies to state prisons and, as such, may be asserted against the prison or against a prison employee in his or her official capacity. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998)). *See also Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). But Title II of the ADA does not provide a private right of action against a public employee acting in his or her individual capacity. *Everson*, 556 F.3d at 501 n.7 (citations omitted). Consequently, Plaintiff cannot succeed on his claims against Defendants in their individual capacities for violation of the ADA.

In addition, Plaintiff fails to state a claim under the ADA against Defendants in their official capacities.  Plaintiff alleges that his medical condition constitutes a disability under the ADA and that Defendants have failed to make reasonable accommodations for his disability by failing to have Plaintiff physically evaluated for a lung transplant, failing to place Plaintiff on the lung transplant list, and failing to provide Plaintiff with appropriate medical treatment.  (Docket no. 1 ¶¶ 70, 72.)  Even assuming, *arguendo*, that Plaintiff is disabled under the ADA, a prisoner such as Plaintiff who alleges that he is receiving incompetent treatment for a medical problem while in prison is not complaining of being excluded from a prison service, program, or activity, or of discrimination because of his disability and, therefore, fails to state a claim under the ADA. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).  Thus, Plaintiff's ADA claim should be dismissed.

iv.      Plaintiff's State Law Claim

Along with his constitutional allegations, Plaintiff sets forth a state law claim of negligence.  (Docket no. 1 ¶¶ 74-79).  28 U.S.C. § 1367(c)(3) provides that the court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.  As recommended above, all of Plaintiff's federal claims should be dismissed.  Therefore, pursuant to 28 U.S.C. § 1367(c)(3), the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law negligence claim.  *See Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

Based on the discussion above, the claims set forth by Plaintiff in his Complaint are not adequately pled so as to state a claim upon which relief can be granted, and they are insufficient

14

to withstand Defendants' Motions to Dismiss.  Furthermore, since Plaintiff has failed to plead that Defendants Collard, Neusbaum, and Laughhunn violated a clearly established constitutional right, they are entitled to qualified immunity.  It is, therefore, recommended that Defendant Gregory W. Fuller, D.O.'s Motion to Dismiss (docket no. 21); MDOC Defendants Maxine Collard, Nathanael Neusbaum, and Summer Laughhunn's Motion to Dismiss (docket no. 25); and Defendant Kevin Chan, M.D.'s Motion to Dismiss (docket no. 28) be granted.

Assuming the recommendation to grant the aforementioned Motions to Dismiss is adopted, there will be several Defendants remaining in this action, three of which, the MDOC, Jeffrey Stieve, and John Doe(s), have not yet been served.[3]  For the same reasons as discussed above with regard to Defendants Fuller, Collard, Neusbaum, Laughhunn, and Chan, Plaintiff has failed to state a claim against Defendants MDOC, Papendick, Stieve, Whiteman, Larson, Bashir, Tan, Corizon Health, Inc., Doe(s), and Duckworth, regardless of service.  Accordingly, it is recommended that Plaintiff's claims against these remaining Defendants be dismissed pursuant to 28 U.S.C. § 1915(e)(2) and that Plaintiff's Complaint be dismissed in its entirety.

2.      *Plaintiff's Motion for Injunctive Relief [3]*

On December 8, 2014, the same date that Plaintiff filed his Complaint, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction.  (Docket no. 3.)  In his Motion, Plaintiff asks the Court to issue a temporary restraining order and preliminary injunction (1) "suspending and restraining the operation, enforcement, or execution" of the responses to his grievances and (2) reinstating Plaintiff's "emergency medical room and placement in E-Wing as a critical patient."  (*Id*. at 1.)

---

[3] It appears that the MDOC was inadvertently overlooked as a party to Plaintiff's Complaint, and a summons was never issued to Plaintiff for service.  This error is harmless, however, as Plaintiff's Complaint fails to state a claim against any Defendant, regardless of service.

Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary injunctions and temporary restraining orders.  The Court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue.  *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993).  "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it."  *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted).  In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues.  *Id*. (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal.  *Id.  See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

As discussed above, it is recommended that Plaintiff's Complaint be dismissed in its entirety for failure to state a claim upon which relief can be granted.  There is simply no likelihood of Plaintiff's success on the merits, which is fatal to Plaintiff's instant Motion. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction should be denied.

### 3.    *Defendant Chan's Motion for Extension of Time [30]*

On March 27, 2015, Defendant Kevin Chan, M.D. filed a Motion for Extension of Time to Respond to Plaintiff's First Request for Production of Documents to Defendant Dated February 27, 2015.  (Docket no. 30.)  Specifically, Defendant Chan seeks an extension of time in

16

which to respond to Plaintiff's discovery request until after the Court rules on Defendant Chan's outstanding Motion to Dismiss. (*Id.* ¶ 7.) In light of the recommendation that Defendant Chan's Motion to Dismiss be granted and that Plaintiff's Complaint be dismissed in its entirety, it is recommended that Defendant Chan's Motion for Extension of Time be denied as moot.

### C.    Conclusion

For the above-stated reasons, the Court should **DENY** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (docket no. 3); **GRANT** Defendants Gregory W. Fuller, D.O., Maxine Collard, Nathanael Neusbaum, Summer Laughhunn, and Kevin Chan, M.D.'s Motions to Dismiss (docket nos. 21, 25, and 28); **DENY** Defendant Chan's Motion for Extension of Time to Respond to Plaintiff's First Request for Production of Documents (docket no. 30) as moot; and dismiss Plaintiff's Complaint in its entirety.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: June 4, 2015                    s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Kenneth Johnson and Counsel of Record on this date.

Dated: June 4, 2015                    s/ Lisa C. Bartlett
                                       Case Manager

18